# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MATTHEW M. AULICINO,**

      **Plaintiff,**

**v.**                                                                       Case No:    **6:16-cv-878-Orl-31TBS**

**KRISTINE EPPERSON MCBRIDE,
STUART EPPERSON and NANCY
EPPERSON,**

      **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss Plaintiff's Amended Complaint (Doc. 36) filed by the Defendants and the response in opposition (Doc. 38) filed by the Plaintiff, Matthew Aulicino ("Aulicino").

### I.    Background

According to the allegations of the Amended Complaint (Doc. 34), which are accepted in pertinent part as true for purposes of resolving the instant motion, Aulicino was hired as a bodyguard for Defendant Kristine Epperson McBride (henceforth, "Kristine McBride") during the course of a contentious divorce from her then-husband, William McBride. (Doc. 34 at 1-2). Aulicino contends that he worked for 32 weeks between November 2013 and June 2014 but did not receive all of the money he should have been paid during that period.[1] (Doc. 34 at 4). He also contends that the Defendants lied to him to induce him to quit the security firm that he had worked for and to continue working for the Defendants even though he was not being paid. (Doc.

---

[1] The Amended Complaint is silent as to whether Aulicino received any payment at all.

34 at 7-8). Finally, he alleges that he was falsely accused by the Defendants of offering to murder William McBride. (Doc. 34 at 9).

In the Amended Complaint, he asserts the following claims: breach of contract (Count I); unjust enrichment (Count II); quantum meruit (Count III); fraudulent misrepresentation (Count IV); malicious prosecution (Count V); and false and negligent reporting of criminal behavior (Count VI). By way of the instant motion, the Defendants seek dismissal of all six counts.

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.   Analysis**

In each of the first three counts of the Amended Complaint, Aulicino attempts to recover the money he says he is owed for the work he performed between November 2013 and June 2014. Aulicino filed this suit on May 23, 2016. The Defendants argue that those three counts are governed by Florida's two-year statute of limitations on actions to recover wages, Fla. Stat. § 95.11(4)(c), and that they therefore should be dismissed to the extent they seek to recover wages earned before May 23, 2014. However, the Defendants' argument is not properly raised in a Rule 12(b) motion, as they are not arguing that the Plaintiff has failed to state a claim in those three counts. They are just seeking to limit his recovery if he should prevail. The motion to dismiss will therefore be denied as to the first three counts.

Next, the Defendants argue that Count IV, the fraudulent misrepresentation claim, should be dismissed because the Plaintiff has failed to plead fraud with the particularity required by Rule 9(b). Here, the Defendants are on firmer ground. Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what

omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

In the Amended Complaint, Aulicino makes conclusory allegations that "the Defendants" induced him to quit his job and work for them directly by falsely promising him "a permanent job, with greater financial stability, double-overtime rates, additional compensable duties, and other lavish fringe benefits." (Doc. 34 at 7). He also alleges that during the time he worked for them, "Defendants continued to promise that Plaintiff would be fully compensated, [sic] would enjoy a permanent engagement and substantial benefits." (Doc. 34 at 7). However, Aulicino never provides the precise statements, the time or place they were made, or even identifies the person making them. Count IV will be dismissed.

Aulicino agrees that Count V, the malicious prosecution claim, should be dismissed. (Doc. 38 at 10).

In Count VI, Aulicino attempts to assert a claim for negligent reporting of criminal activity, a tort first recognized by the Florida Supreme Court in *Valladares v. Bank of America Corp.*, 197 So. 3d 1 (Fla. 2016). In that case, a bank teller mistakenly (but innocently) notified the authorities that a bank robber was in her bank, which ultimately resulted in Valladares being seriously injured by the police and suffering PTSD. *Id.* at 3-4. Police discovered the mistake before Valladares was arrested or prosecuted, and therefore he could not assert a malicious prosecution claim. *Id.* at 10. The tort of negligent reporting is intended to provide redress for

injuries suffered due to incorrect reports of criminal activity that do not result in arrest or prosecution (and thereby potentially give rise to a malicious prosecution claim).  *Id.* at 10-11.

A cause of action for negligent reporting "arises when there is incorrect reporting plus conduct on the part of the reporting party that rises to the level of punitive conduct."  *Id. at* 11.  According to the *Valladares* court, to constitute "punitive conduct," the actions at issue must reach beyond simple negligence:

> The character of negligence necessary to sustain an award of
> punitive damages must be of a "gross and flagrant character,
> evincing reckless disregard of human life, or of the safety of persons
> exposed to its dangerous effects, or there is that entire want of care
> which would raise the presumption of a conscious indifference to
> consequences, or which shows wantonness or recklessness, or a
> grossly careless disregard of the safety and welfare of the public, or
> that reckless indifference to the rights of others which is equivalent
> to an intentional violation of them."

*Id*. (citation omitted).  The *Valladares* court also pointed out that the required level of negligence for punitive damages "is equivalent to the conduct involved in criminal manslaughter."  *Id.* (citation omitted).

The Defendants seek dismissal of Count VI on the grounds that their alleged actions do not rise to the level of punitive conduct, as needed to state a claim for negligent reporting.  (Doc. 36 at 6).  In Count VI, Aulicino alleges that in October 2013 he was approached (separately) by Kristine McBride and her mother, Defendant Nancy Epperson, who asked him to murder William McBride "in exchange for compensation."  (Doc. 34 at 9).  Aulicino immediately refused and left the premises.  (Doc. 34 at 9).  To avoid liability for their solicitation, the Defendants falsely reported "to police and/or other authorities" that Aulicino had offered to murder William McBride.  (Doc. 34 at 9).  According to Aulicino, this led police to "detain and arrest" him as he left Kristine McBride's home.  (Doc. 34 at 10).

> In the weeks that followed, Plaintiff was subjected to the threat of being prosecuted for attempted murder, solicitation, conspiracy and/or other crimes; was confronted with repeated threats and allegations by [Kristine] McBride's husband that Plaintiff would be prosecuted or otherwise punished; was named in a series of emails between the parties and [Kristine] McBride's husband and/or other persons, in which his reputation was impugned and his good name and reputation defamed; was the subject of emergency motions, petitions or other pleadings filed in the McBride divorce case; was named in a lawsuit prepared by [William McBride]; was repeatedly followed, intimidated, stalked or harassed by [Kristine] McBride and/or her husband and was forced to permanently relocate his family outside the State of Florida for fear of retribution by the McBrides and the Eppersons.

(Doc. 34 at 10).

Accepting the allegations as true, the Court finds that the Defendants' alleged conduct – *i.e.*, falsely reporting a murder solicitation – is sufficient to state a claim for negligent reporting. It clearly rises above simple negligence. It at least arguably exceeds the conduct at issue in *Valladares*, where the bank teller made an innocent mistake in reporting the Plaintiff to the police. Accordingly, the motion will be denied as to Count VI.[2]

---

[2] It is not clear that Aulicino has properly pleaded that he suffered damages as a result of the false police report. The harms that he lists – the threats of prosecution, having his reputation tarnished in the divorce proceedings, and so forth – either did not come to pass or were not caused by the report. However, the Defendants did not raise this issue.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Plaintiff's Amended Complaint (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**.   Count IV is **DISMISSED WITHOUT PREJUDICE**   Count V is **DISMISSED WITH PREJUDICE**.   In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 13, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE